CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED Roanoke
MAY 02 2013
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| YVONNE REEVES, | CASE NO. 7:13CV00001 |
| Plaintiff,[1] | |
| | REPORT AND RECOMMENDATION |
| v. | |
| | By:   B. WAUGH CRIGLER |
| CAREY CAMPBELL, et al, |      U.S. MAGISTRATE JUDGE |
| Defendants. | |

The February 5, 2013 motion to dismiss filed by the defendants is before the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) to conduct proceedings and render to the presiding District Judge a report setting forth appropriate findings, conclusions, and recommendations for its disposition. Plaintiff alleges that she suffered damages as a result of the defendants discriminating against her in violation of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601, et seq. The defendants seek dismissal of the Complaint with prejudice on the basis that it fails to state a plausible claim for racial discrimination under the FHA. For the reasons that follow, the undersigned RECOMMENDS that an Order enter GRANTING the defendants' motion to dismiss the claim of racial discrimination in violation of the FHA and DISMISSING this action from the docket of the court.[2]

**CASE SUMMARY**

---

[1] Originally, Rochelle Reeves also was named as a plaintiff. By an Order entered on April 19, 2013, Rochelle Reeves was stricken as a party plaintiff on the basis that she had been improvidently joined. (Dkt. No. 24.) The undersigned hereafter will refer to the plaintiff only in the singular.

[2] The defendants originally sought oral argument on the motion to dismiss but withdrew the request when the undersigned sought to schedule argument. (Dkt. Nos. 21, 23.) The plaintiff did not seek oral argument. As a result, the motion is being decided on the pleadings.

Plaintiff alleges that she resides in an apartment at 54B Melton's Run Lane in Galax, Virginia. (Dkt. No. 3, at 1.) The property is owned by defendant Melton's Run, and it has been managed by defendant Community Housing Partner's Corp ("CHP"). (Dkt. Nos. 3-6, at 1-2; 9, at 2.) Defendants Carey Campbell, Melissa Stamper, and Tonya Thompson were all employees of CHP during the relevant period of this case.[3] *Id.* In late 2010 or early 2011, plaintiff filed a charge with the Virginia Fair Housing Board ("VFHB") alleging discrimination on the basis of their race in violation of the Virginia Fair Housing Law. (Dkt. No. 3-6.) Plaintiff alleged that some of the defendants, including Melton's Run, CHP, and Thompson, had failed to properly or timely respond to requests seeking mold removal from the apartment for the period from April through August of 2010. *Id.* at 2. She also charged that the defendants had promptly cleaned the mold from the apartment of a white resident of the apartment complex and advised the how to treat and prevent mold in the future. *Id.* at 3.

On May 21, 2011, the VFHB closed plaintiff's case, having determined that there was insufficient evidence of racial determination. (Dkt. No. 3-1, at 2.) Its investigation failed to establish that plaintiff had been subjected to adverse or other negative treatment or that similarly situated people not members of the plaintiff's protected class were not subjected to the same adverse treatment or negative conduct. (Dkt. No. 3-4, at 9-11.) Accordingly, the VFHB concluded that there was "no reasonable cause to believe [that Melton's Run, CHP, and

---

[3] In a recent letter to the court, plaintiff stated "I think it (the case) has been misunderstood that I have a civil suit against the individuals that worked for CHP but I in fact intended to sue the Company itself." (Dkt. No. 22.) However she continues, "...I just wanted to make myself clear that my suit is to be against Community Housing Partners (which would include all employees that were involved with Melton's Run Apartments during the time frame..." during which she alleges discrimination. *Id.* These are contradictory statements, and the undersigned elects to address the motion to dismiss using the Complaint in the form it was filed.

2

Thompson] discriminated in the conditions or terms of rental because [of the plaintiff's] race. *Id.* at 11.

Plaintiff then filed the instant action against the defendants in the Western District of Virginia on January 3, 2013. (Dkt. Nos. 1, 3.) The plaintiff set forth a plethora of factual allegations in her Complaint. She alleges that she felt discriminated against on the basis of race, which is African American. (Dkt. No. 3, at 1.) She also claims that she initially informed defendant Thompson about mold in the apartment on April 1, 2010 and asked to be moved to a different apartment until it was cleaned. *Id.* While she contends that the request was denied, she further alleges that the defendants acknowledged a mold problem and had maintenance confirm that mold existed and that a commode was "loose from the floor." *Id.* However, the plaintiff claims that she received no word from the defendants by August 25, 2010. *Id.*

Plaintiff avers that flooding from an upstairs apartment occurred on May 5, 2010 which led to further mold growth which the defendants did nothing to fix, despite complaints. *Id.* at 2-3. Plaintiff alleges mold problems existed since 2004, that mold has spread throughout the apartment, damaging belongings, and, that "my health is severely affected by years of breathing toxins." *Id.* at 3. Ms. Reeves contends that her doctor sent a request to the apartment complex management to remove all carpet in the apartment in August 2010, and that she was forced to undergo major surgery on her sinus cavities as a result of the mold.[4] (Dkt. Nos. 3, at 3, 6, 12, 15; 3-10.)

Plaintiff further alleges that some of the defendants and maintenance personnel entered the apartment on August 26, August 27, and November 17, 2010 for inspections, against

---

[4] During this period, plaintiff also claims that she suffered injuries and required medical attention as a result of an unstable commode. (Dkt. No. 3, at 7.) She alleges that a Tony Higgins, a maintenance man at the apartment complex, found that "the pipe to the commode sit on was too high from the floor level." *Id.* She contends that management "took no responsibility." *Id.*

3

plaintiff's express wishes because she was recovering from surgery. (Dkt. No. 3, at 3-5, 9.) While an inspection by the defendants in May 4, 2010 "revealed no mold or mildew in certain location (sic)," plaintiff asserts that a "county builder inspector saw and photographed serious mold grow (sic) in several area (sic) in my apt." *Id.* at 5-6. Plaintiff refers to a letter written by Tony Higgins, a maintenance man at the complex, which reveals that Higgins discussed the mold in plaintiffs' apartment several times with management, but that he was instructed never to speak of it again, and was punished for his actions and later resigned. *Id.* at 8. Plaintiff admits that management did offer to relocate to a new apartment in August 2010, but that this was refused because plaintiff was recovering from surgery, and because she had heard from a previous tenant that the new apartment also had a mold problem. *Id.* at 9. Plaintiff asserts that other apartments received new carpet, while her apartment did not, despite having asked for new carpet over a period of several months. *Id.* at 4.

Plaintiff also alleges that, in December 2010, management finally began addressing the mold problem in her apartment, spending four days to remove walls and replace carpet while providing lodging for the plaintiff in a hotel. (Dkt. No. 3, at 10.) However, she claims that the renovation efforts spread moldy debris and paint dust throughout the apartment, filing the air, "messing up" the air ducts, and ruining much of the furniture.[5] *Id.*

Finally, plaintiff contends that there was an altercation on December 21, 2010 with Carey Campbell. (Dkt. No. 3, at 11.) She asserts that Ms. Campbell entered the apartment for an inspection following the renovation work. *Id.* at 12. During this inspection, the defendant slammed a door in Yvonne Reeves's face, causing injuries and breaking her glasses, all the while saying such things as if she were black the plaintiff and her family wouldn't talk to her like that,

---

[5] In addition, plaintiff claims that she notified the Occupational Safety and Health Administration after observing that the construction workers were not using proper safety equipment and that OSHA imposed a fine on CHP. (Dkt. No. 3, at 10.)

4

"Yvonne you are sicking (sic) your people on me," and "if my boss was here would being saying that to me and...my boss would say the same thing." (Dkt. Nos. 3, at 12-13; 16.) Plaintiff does not believe that this defendant was adequately punished for what she believes were racist comments and an "assault."[6] (Dkt. No. 3, at 13.)

On February 5, 2013, the defendants filed a motion to dismiss for failure to state a claim upon which relief could be granted. (Dkt. No. 8.) They argue that the plaintiff's allegations of membership in a protected class and harm are not enough to support a claim for racial discrimination under the FHA. (Dkt. No. 9, at 10.) They contend that plaintiff has not alleged that the defendants' action or inactions were motivated by a discriminatory purpose, that they had a discriminatory impact, or that the defendants treated her differently from non-African-American residents. *Id.* Moreover, they argue that even if the plaintiff has pled facts consistent with a claim for unlawful discrimination, they remain insufficient to state a plausible claim for race discrimination under the FHA. *Id.* at 11-12. Accordingly, the defendants contend that plaintiff's Complaint fails to state a plausible cause for racial discrimination under the FHA and that the Complaint should be dismissed with prejudice as to all of the defendants. *Id.*

On February 27, 2013, plaintiff filed a pleading entitled "Claim," in response to the motion to dismiss in which she further details her allegations against Ms. Campbell. (Dkt. No. 16.) The "Claim" also alleges that mold has contaminated all of the plaintiff's belongings for years, she has lost her sense of smell, she has a fading sense of taste and hearing, she has a sewage/toilet problem that has not been fixed for years, and she claims to have suffered

---

[6] Plaintiff also includes several other documents in their pleadings, including a copy of plaintiff's case before the VFHB and all findings and submitted evidence. (Dkt. No. 3-4.) Most importantly, however, is an August 31, 2012 letter from Tony Higgins which details his perspective on plaintiff's complaints and the defendants' actions. (Dkt. No. 3-2.) The undersigned will discuss this evidence later in the report.

harassment and "fading health." *Id.*; (Dkt. Nos. 3-10, 3-17.) In all, plaintiff seeks $200,000 in compensatory damages and $900,000 in damages for pain and suffering. (Dkt. No. 16.)

On February 7, 2013, the presiding District Judge referred all dispositive motions to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) to conduct proceedings and to issue a Report and Recommendation as to the disposition of the motions. (Dkt. No. 10.)

**MOTION TO DISMISS**

Under Fed. R. Civ. P. 12(b)(6), a cause of action may be dismissed for "failure to state a claim upon which relief may be granted." The court must accept as true any factual allegations contained in the complaint, though it need not accept legal conclusions; and, to survive a motion to dismiss, a complaint must provide sufficient facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)). Facial "plausibility" lies on a spectrum between possibility and probability, and it is established when the court is able to draw a reasonable inference that the defendant may be liable for the conduct alleged. *Id.* The complaint need not include detailed factual allegations, but the factual allegations must be more than a formulaic recitation of the elements of a cause of action and must raise a plausible right to relief above the speculative level. *Id.* The court may consider documents attached to the complaint as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.[7] *Secretary of State For Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). *Pro se* complaints are "held to less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed if it appears "beyond doubt that the

---

[7] "As an important note, we would like to emphasize the rule that in a 12(b)(6) motion, this Court will only consider that which is contained in the complaint, attached as an exhibit pursuant to Rule 10(c), a matter of public record, or a fact that has been judicially noted." *Space Technology Development Corporation v. Boeing Company*, No. 05-1671, 2006 WL 3612816, *2 (4th Cir. December 12, 2006).

plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble*, 429 U.S. 97, 106-107 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972)). By the same token, the federal courts may not be an advocate for a *pro se* plaintiff and must hold the complaint to certain minimal pleading standards. *See Holsey v. Collins*, 90 F.R.D. 122, 128 (D.C.Md. 1981); *Switzer v. Town of Stanley*, No. 5:10cv00128, 2010 WL 4961912, at *2–3 (W.D.Va. December 1, 2010); *Brazil v. U.S. Dept. of Navy*, 66 F.3d 193, 198-199 (9th Cir. 1995). It is within the court's discretion to consider evidence outside of the pleadings; however, if the court chooses to do so, it should convert the motion to dismiss to a motion for summary judgment. *See McBurney v. Cuccinelli*, 616 F.3d 393, 410 (4th Cir. 2010).

As said, the defendants contend that plaintiff has failed to state a claim upon which relief can be granted for racial discrimination in violation of the Fair Housing Act. Under the FHA, it is unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). To set forth a *prima facie* case of discrimination under the FHA, a plaintiff must show either (1) that the act or practice complained of was motivated by a discriminatory purpose, or (2) that is has a discriminatory impact. *See Betsey v. Turtle Creek Associates*, 736 F.2d 983, 986-987 (4th Cir. 1984). Principals and employers can be held vicariously liable under the FHA in accordance with traditional agency principles. *See Meyer v. Holley*, 537 U.S. 280, 285-287 (2003); *Walker v. Crigler*, 976 F.2d 900, 904-906 (4th Cir. 1992).

The undersigned agrees that plaintiff's Complaint fails to set out a plausible claim for racial discrimination under the FHA. She alleges that she has been discriminated against on the basis of her race, refers to some vaguely racist remarks by an apartment complex manager of the

Community Housing Partnership, and alleges that another apartment tenant received services that she did not. However, plaintiff never refers to the FHA, never provides facts to establish that the defendants' actions or inactions were motivated by discriminatory purpose or had a discriminatory impact, and never sets forth allegations that she was subjected to disparate treatment on the basis of race. The plaintiff's "response" to the defendants' motion to dismiss does not improve her position, in that she essentially repeats the same allegations against Ms. Campbell and asserts tort-like damages to property and health as a result of the defendants' actions. (Dkt. No. 16.)

A claim of racial discrimination under the FHA must be supported by more than an allegation of harm and membership in a protected class if it is to survive a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 667-670, 680-682 (2009); *Boldin v. Wingfield*, No. 6:10cv00010, 2010 WL 3766325, at *3-4 (W.D.Va Sept. 16, 2010). On the whole, these allegations more closely resemble claims arising under common law tort law rather a claim under the FHA. While plaintiff may have found Campbell's remarks offensive, isolated or stray racially related remarks are not normally treated as evidence of discrimination, especially when they are not tied to management policy. *See Harris v. Itzhaki*, 183 F.3d 1043, 1055 (9th Cir. 1999); *Carnell Const. Corp. v. Danville Redevelopment & Housing Authority*, No. 4:10cv00007, 2011 WL 285694, *13 (W.D.Va. January 27, 2011). As the parties are all residents of Virginia, this court would lack subject matter jurisdiction over such tort claims absent federal question jurisdiction. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966).

Though plaintiff has attached numerous documents to her Complaint, her evidence does not make her federal claims under the FHA plausible on their face. The Complaint refers to testimony by Tony Higgins, a former maintenance man at the apartment complex. (Dkt. No. 3,

at 4, 8.) In his August 31, 2012 letter, Higgins details his experiences working as a maintenance man at the Melton's Run Apartments from 2006 until his termination in December of 2010, working in succession for management groups Pendergraph, LLC; GEM, LLC; and CHP. (Dkt. No. 3-2.) Higgins describes several incidences of disparate treatment on the basis of race, including an assertion that he was specifically instructed to not do anything about the mold in plaintiff's apartment as there was no budget for it, while being instructed to clean mold and to shampoo or replace carpet in the apartments of more than six to eight white tenants over the same period. *Id.*

Notably, however, Higgins's allegations do not relate specifically to conduct by Melton's Run or Community Housing Partners and its employees that would implicate the FHA. Higgins's allegations only implicate GEM, LLC and its employees, who are not parties to this action. (Dkt. No. 3-2, at 1-2.) Higgins's allegations against CHP are that its employees knew about the mold and flooding, that he was instructed by Melissa Stamper to clean up the mold and that she didn't want to hear about plaintiff's mold problems, that he was instructed by Carey Campbell to not speak to plaintiff or go to her apartment until her complaints were resolved, while no similar prohibition was placed on his interactions with any other tenant; that no one at CHP responded on May 6, 2010 when plaintiff called the emergency line to report flooding; and that Campbell did not tell plaintiff that her doctor had sent a letter to CHP recommending that her apartment have hard floors installed instead of carpet and refused plaintiff's attempt to change her mind to switch to hard floors after having already ordered carpet. *Id.* at 2-3. None of these allegations trigger liability under the FHA. Though Higgins's letter does indicate that there may have been a disparate treatment on the basis of race in the management of the Melton's Run Apartments, his letter does not suggest that any of these potential violations of the FHA occurred

while CHP managed the property. Plaintiff has made it quite clear that her lawsuit is specifically against CHP and its employees, referencing none of Higgins' allegations against GEM, and she does not allege that CHP or Melton's Run should or could be liable for the conduct of a prior management group.[8] Accordingly, Higgins's letter fails to provide a basis for any plausible federal claim against Melton's Run or CHP and its employees.

The documents from the VFHB, which also are attached to the complaint, include allegations of disparate treatment, but they are vague and general, and when taken out of context have little meaning. As to the alleged "assault," plaintiff claims that Ms. Campbell "wouldn't dare do this to a white tenant, nor has she that I know of." (Dkt. No. 3-3, at 5.) The VFHB report shows that plaintiff claimed a white female tenant who lived in the apartment complex had her mold promptly cleaned after complaining to management, and that plaintiff was advised how she could prevent and clean it herself in the future. (Dkt. No. 3-6, at 3.) An unsigned attached letter attached to the Complaint also says, "There is a real problem here, and I hope you can help Ms. Reeves, as white people are not treated like this." (Dkt. No. 3-7.) These allegations are insufficient to create a reasonable inference that the defendants are guilty of the alleged conduct in violation of the FHA.

**SUMMARY**

---

[8] Plaintiff may have a claim under the FHA for vicarious liability against Melton's Run, LP, as the owner of the property, for the actions of the prior management group, GEM, LLC. Moreover, Higgins's letter could be seen to make factual allegations in support of that claim. However, it is not a claim that plaintiff has made here. Neither Melton's Run or GEM are mentioned in plaintiff's complaint, and each is rarely referred to in the various attached documents. At one point, she appears to contend that the VFHB, who is also not a party to this lawsuit, may be liable for the actions of the management groups, but never clearly argues that Melton's Run could be. (Dkt. No. 3-3, at 1.) Plaintiff's original housing discrimination complaint and more recent filings also appear to indicate that her claims specifically concern the actions of CHP and its employees. (Dkt. Nos. 3-6, 16, 22.) Even though plaintiff is *pro se* and entitled to a lower pleading standard, the undersigned cannot create a claim for her out of a whole cloth, especially regarding liability for the actions of a party that is not part of her lawsuit.

For these reasons the undersigned RECOMMENDS that the court enter an Order GRANTING the defendants' motion to dismiss and DISMISSING plaintiff's complaint from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to the plaintiff and all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

5-2-2013
Date